GARVEY ELEVATORS, INC., Appellant,

v.

EAGLE MOUNTAIN–SAGINAW INDE-
PENDENT SCHOOL DISTRICT
et al., Appellees.

No. 16869.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 12, 1968.

Elvin E. Tackett, Fort Worth, for appellant.

Morgan, Gambill & Owen, and Cecil A. Morgan, Fort Worth, for appellees.

OPINION

MASSEY, Chief Justice.

The question is the proper amount of 1966 taxes.

On December 21, 1966, being dissatisfied with the assessment of ad valorem taxes upon certain of its grain elevators, Garvey Elevators filed suit to have such invalidated as to any excess above $31,975.03, which sum Garvey paid into the registry of the court on the filing of suit, and sought to enjoin collection of any amount in excess of such sum.

The amount of taxes assessed for 1966 on the subject property was $70,856.10.

Such assessment was made after rendition of the subject property for taxes by the School District tax assessor-collector, Garvey having failed to render the same. There was proper procedure which followed, through appointment of and discharge of duties by a Board of Equalization. Included in the discharge of duties was the reduction of taxes rendered on the subject property. This was by reason of Garvey's request to delete a storage tank as part of the property assessed, it having been destroyed in 1965. No other request was made of the tax authorities and no other complaint of any kind was registered until suit was filed.

Both adversaries filed motions for summary judgment. That of the School District was granted, upholding its assessment of $70,856.10, and (under appropriate pleadings and proof) as part of its order authorized levy of execution for taxes.

Affirmed.

■ Birth of the instant controversy lay in a change in policy of the Federal Government relative to grain storage. It appears that by January 1, 1966 only a small percentage of the facilities of privately owned elevators, of which that of Garvey was one, was used for the storage of the government's reserve supply of grain, though in earlier years a substantial use was thus made of such elevators for government purposes. Common sense indicates that in the case of such an elevator, the operators of which are unable to successfully obtain other storage customers and thus fill the void created by the loss of the former government business, there would likely be a reduced "market value" as applied thereto. We do not, however, state that a reduction in market value is a necessary and inevitable result, though it would certainly constitute an appropriate element to be taken into consideration in any property evaluation upon being brought to the attention of the agency conducting action designed to enable such.

■ The contradictory statements made in briefs by Garvey and the School District point up the fact that what Garvey considers to have amounted to an excessive tax as the result of unlawful discrimination against it—in the assessment of taxable value of its grain elevators—the School District considers proper both in amount and by method used in arriving at such amount. In any event—according to the School District—the Board of Equalization made a bona fide effort fairly and honestly to assess such, and other properties, at a fair, just, equal and uniform valuation for taxing purposes,—hence—though it might have erred in arriving at the exact market value of the grain elevators, its action is not subject to review by the courts. 54 Tex.Jur.2d 287, "Taxation", the sections under Ch.XI, "Assessment and Valuation", Sub. F "Review of Assessment by Court."

The evidence before the court—on motion for summary judgment—demonstrated that the Board of Equalization did attempt to ascertain the true and full value of the property in money, i. e., the cash market value, as a basis for the assessment of taxes. Their failure in said respect, according to Garvey, resulted because of the fact and circumstance of reduced use of the property for grain storage.

■ The failure of consideration of such a factor by a Board of Equalization in valuing property—other than a type where that factor is usually and customarily essential of consideration in its valuation—would not be illegal, arbitrary, capricious, or necessarily resultant in an excessive valuation upon which no proper assessment could be based. Especially would this be true where no one ever brought facts and circumstances to the attention of the Board demonstrating the reduced use of the property as a storage facility and the resultant effect upon market value.

No such information was ever presented to the Board of Equalization and therefore there could have been nothing arbitrary or

capricious in its procedure. Garvey concedes this, yet contends that the Board's failure to take into consideration that same element in arriving at a value amount results in an arbitrary and improper value.

We do not agree with the contention of Garvey. In the existent situation Garvey is without any such right of complaint as he might have had if an attempt had been made to have its property values lowered by the Board of Equalization. Without such the case indisputably appears as one wherein the Board of Equalization made a bona fide effort, fairly and honestly, to do its duty in assessing the subject property for tax purposes. The Board was clothed with jurisdiction and at no time acted in excess of its powers. It did not adopt a method of valuation which would be illegal, arbitrary, or fundamentally wrong,— and its valuation of the Garvey property was not grossly excessive in comparison with other property similarly situated. All this affirmatively appears of record as well as the absence of a fact issue thereupon. The nature of Garvey's action would be a collateral attack on the quasi-judgment of the Board of Equalization. No more than "error of judgment" by the Board could be said to appear, and this will not suffice as a basis for avoiding the Board's action. City of Fort Worth v. Fort Worth Radiator Mfg. Co., 278 S.W.2d 184, 188 (Fort Worth Civ.App., 1955, writ ref. n. r. e.).

Garvey asserts error in that the trial court failed to consider certain depositions on file at time of the hearing of the motion for summary judgment. We fail to observe where the record positively establishes the fact that the trial court failed to consider the depositions. However, if it did it would not have failed to receive any information which failure would have made the summary judgment erroneous. Error, if in fact existent, was harmless.

The response of the School District included its action (cross-action) to collect the taxes assessed in full. Its motion for summary judgment was filed on January 25, 1967 and judgment for the taxes was sought. Judgment was rendered April 14, 1967. Appellant contends that since taxes do not become delinquent until February 1st of the year following that for which payable, the cross-action against it was premature.

The error, if any, is certainly other than fundamental. Actually, we are of the opinion that contention of error in said respect is frivolous. Surely appellant should not be heard to contend he does not owe taxes assessed and to attempt—in the same suit—to prevent judgment against him for such taxes in the event the decision should go against him.

All points of error have been severally considered and are overruled.

Judgment is affirmed.