MOBIL PIPE LINE COMPANY, Appellant,

v.

BAIRD INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 4528.

Court of Civil Appeals of Texas, Eastland.

March 10, 1972.

Rehearing Denied April 7, 1972.

McMahon, Smart, Sprain, Wilson & Camp, Hudson Smart, Abilene, Donald G. Canuteson and William H. Tabb, Dallas, for appellant.

Brooks, Jones & Gordon, Tom Gordon, Abilene, for appellee.

COLLINGS, Justice.

The Baird Independent School District brought suit against Mobil Pipe Line Company to collect ad valorem taxes, together with penalties and interest thereon for the years of 1969 through 1970, and attorney's fees. The property of the defendant pipe line company within the school district consisted of more than sixty miles of oil pipe lines. The trial was before the court without a jury and judgment was rendered in favor of the plaintiff school district for the sum of $18,474.92 in delinquent taxes for the years 1969–1970 inclusive, including penalty and interest. The court did not allow a recovery for attorney's fees. Mobil Pipe Line Company has appealed.

Appellant urges points contending that the court erred in failing to hold that the appellee school district board or equalization did not follow the statutory mandates for arriving at the value of appellant's property; that the appellee school board adopted an arbitrary plan which was erroneous in arriving at the value of such property, and ignored market value as the basis for valuation of the property; that the court erred in failing to hold that appellant sustained substantial injury because of the board's illegal method of valuing appellant's property, erred in failing to determine the amount of damages sustained by appellant, and erred in failing to hold that the assessed valuation of pipe lines should not exceed 45% of their market value and to limit the recovery of appellee school district accordingly.

The record shows that appellee school district called its tax assessor-collector, who identified certified copies of the delinquent tax rolls of the district on personal property for the years 1969 and 1970. She testified that the certified copies in question were true and correct copies of the school district records and showed that the defendant owed taxes on the pipe lines in question in the amount of $8,032.57 for the year of 1969, and $8,032.57 for the year 1970, and that such taxes were due, delinquent and unpaid until July 6, 1971, the date of the trial. She further testified that the value of defendant's pipe lines was $518,230.00. The school district also called as a witness Mr. Bruce Williams, a member of the school board and the board of equalization, and who had held the position of active secretary of the board for the past two years. He testified that he was familiar with the value of land in Callahan County including that of appellant's pipe lines, and that the levy and assessment made by the board of education on such pipe lines was just and fair. A Mr. F. E. Neel, also a member of the board of equalization of appellee school district, testified that on real estate the board would take a percentage of the value put on the property by a Mr. B. H. Freeland for the assessed value, and that such value would vary from year to year; that the last year the board used approximately 45% of Mr. Freeland's values. Mr. Neel further testified that on personal property the board did not find any market value or apply any percentage to the values found, but that these properties were put on the tax rolls at the value presented by the tax assessor, which was

so much per cow or other item of property, etc., all cows or items of property being of the same value.

Appellant pipe line company introduced in evidence the testimony of Mr. E. T. Compere, a qualified appraiser. Mr. Compere testified that he was employed by appellant to estimate the fair market value of real properties of Baird Independent School District as of January 1, for each of the years 1969, 1970 and 1971. Of the properties so appraised as of January 1, 1969 and 1970, assessed values on the school district tax roll was an average of 20% of the market value at those times; that he investigated values of property in the district, comparing actual selling prices to assessed values during the period of time in question. He stated that on rural properties the assessed values ranged from 9% to 16% of the selling price or an average of 13%; that on residential properties the assessed value ranged from 26% to 30% of the selling price, or an average of 29%; that the average of assessed valuation on the properties actually sold was 21% of the selling price, and that on the appraised properties and the actual sales properties the percentage of fair market value of real estate that got on the tax rolls as tax valuations was 20%.

A Mr. W. D. Davis also testified as an expert appraiser for appellant pipe line company. He testified that the market value of appellant pipe line in the Baird District on January 1, 1969, was $944,100.00 and that on January 1, 1970, the market value was $894,500.00. He testified that if 45% of the market value was used in 1969 the taxes of appellant pipe line company would have been $6,584.40, and if 45% of the market value was used in 1970, the taxes for appellant in that year would have been $6,238.75. Appellant contends that the facts developed upon the hearing demonstrate that the board of equalization did not ever ascertain a market value of the subject properties for the two years in question; did not ascertain the market value of personal properties for the two years

in question; did not ascertain the market value of oil and gas properties for the two year period and probably did not ascertain any market value for real estate for the two years.

The Supreme Court of Texas in the case of City of Waco v. Conlee Seed Company, Inc., 449 S.W.2d 29, in an opinion by Justice Pope stated as follows:

"Article VIII, § 1 of the Constitution of Texas, Vernon's Ann.Const., provides that taxation shall be equal and uniform and all property shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. The Legislature has provided for the means to enforce the uniform taxation required by the Constitution. Articles 7148 and 7161, Vernon's Ann.Tex.Civ.St., provide for the rendition for taxation by the taxpayer, of the value of merchandise and personal property in his hands some time after January 1 of each year. Article 7193 provides that the assessor of taxes shall assess the property for the taxpayer, if he fails to render it. Article 7212 provides for a board of equalization to supervise and equalize the assessment of taxes, and to fix the final valuation. Article 1060a makes the above statutes applicable to municipal corporations and school districts. Thus, to insure the uniformity in taxation the boards of equalization have been established as the final equalizing factor.

"It is our opinion that the controlling principles which govern our decision are found in this statement in State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 572–573 (1954).

'It is now well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valua-

tion. State v. Houser, 138 Tex. 28, 156 S.W.2d 968, 970–971; Druesdow v. Baker, Tex.Com.App., 229 S.W. 493, 495. Moreover, when their official action is attacked it will be presumed that such boards discharged their duties as public agencies according to law and acted in good faith. Zachary v. City of Uvalde, Tex.Com.App., 42 S.W.2d 417; Lubbock Hotel Co. v. Lubbock Ind. School Dist., Tex.Civ.App., 85 S.W.2d 776, no writ; Hinkson v. Lorenzo Ind. School Dist., Tex.Civ.App., 109 S.W.2d 1008, writ dism.

'While it has been held that a grossly excessive valuation may, in law, be sufficient to establish such fraud or illegality as to render a valuation void, Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, writ denied; City of Sweetwater v. Biard Development Co., Tex.Civ.App., 203 S.W. 801, no writ; Simkins v. City of Corsicana, Tex.Civ.App. 86 S.W.2d 792, no writ; Howth v. French Ind. School Dist., Tex.Civ.App., 115 S.W.2d 1036; French Ind. School Dist. [of Jefferson County] v. Howth, 134 Tex. 211, 134 S.W.2d 1036, it is held with equal emphasis that mere errors in judgment or the fact that a trial judge or jury differs with the valuation fixed will not suffice as a basis for avoiding the board's action. Simkins v. City of Corsicana, supra; Druesdow v. Baker, supra; State v. Houser, supra.' "

In the case of City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 the Supreme Court, speaking through Justice Calvert, held in part:

*"The Board of Equalization did not follow the statutory mandate for arriving at the value of property. It ignored market value as the basis for valuation. Its procedures in this respect were wholly unlawful and fundamentally wrong. It is now settled, however, that to obtain relief from taxes arrived at through the use of an arbitrary, illegal and fundamentally erroneous plan of valuation, the taxpayer must show substantial injury.* Druesdow v. Baker, Tex.Com.App., 229 S.W. 493, affirmed Baker v. Druesedow, 263 U.S. 137, 44 S.Ct. 40, 68 L.Ed. 212; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; Lubbock Hotel Co. v. Lubbock Ind. School Dist., Tex.Civ.App., 85 S.W.2d 776, no writ history." (Emphasis ours)

In Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 (Sup.Ct.1955) Justice Calvert speaking for the Supreme Court stated that exact uniformity and equality in tax equalization is an unattainable idea and that "the mere fact that taxing authorities arbitrarily disregard the true and legal basis of arriving at assessed valuations does not, of itself, entitle a litigating taxpayer to relief. To be entitled to relief he must also show that the arbitrary or unlawful plan or scheme of arriving at assessed valuations resulted in substantial injury."

Appellee Independent School District contends that appellant pipe line company failed to meet adequately the test set forth in the above cited cases. Appellee contends that appellant failed to prove substantial injury and failed to show that its taxes or valuations are substantially excessive.

■ In the instant case the appellee Independent School District introduced into evidence the tax rolls, certified delinquent tax statements, and such documents were properly proven and identified. Such documents are prima facie evidence that the tax on the property is due and that the facts stated therein are true, and that all prerequisites required by law pertaining to the levying and assessing of taxes and the rendition of the property on which the suit is brought for taxes due have been complied with.

Appellant pipe line company contends that taxes for 1969, against their pipe lines in appellee school district should be $2,926.-

40 and for 1960, $2,772.95, or a total of $5,-699.35, whereas the taxes for which this suit was filed are $8,032.57 for 1969 and the same amount for 1970, or a total of $16,065.14.

Appellee points out that the testimony in the oral depositions as well as the testimony of the expert witness, W. D. Davis, offered by appellant pipe line company, show that the market value as found by Mr. Davis for the pipe line company on January 1, 1969, was $944,100.00 and on January 1, 1970, was $894,500.00. Mr. Davis then stated that if 45% of the market value was used in 1969 the taxes of appellant would have been $6,584.40, and, if 45% of the market value was used for 1970, the taxes of appellant for that year would have been $6,238.75. Thus, there is a mere $3,-700.00 difference in the taxes sued for by appellee Independent School District and the agreed figures furnished by appellant pipe line company in connection with the 1969 and 1970 taxes.

Accordingly, appellee Independent School District, for the two years of taxes, penalty and interest, is asking for $18,394.58 and based upon 45% of the market value appellant owes $14,692.88, or a difference, notwithstanding the incorrect figures, of $3,701.70. This difference is not such a wide difference as would shock a correct mind as indicated in the above cited cases. In our opinion there is a complete absence of proof of fraud, want of jurisdiction, illegality or an adoption of any arbitrary or fundamentally erroneous plan or scheme on the part of appellee Independent School District and board of equalization in making the valuations of appellant's pipe lines, or that such assessments were grossly excessive. On the contrary the assessments and levies in question are valid and enforceable. Appellant's points are all overruled.

The judgment is affirmed.

McCLOUD, C. J., not participating.