**Steve DORNEY, d/b/a SCD Production Company, Appellant,**

**v.**

**HENDERSON CLAY PRODUCTS, INC., Appellee.**

No. 6–92–009–CV.

Court of Appeals of Texas, Texarkana.

Sept. 9, 1992.

Rehearing Denied Sept. 29, 1992.

Michael G. Carroll, Ireland, Carroll & Kelley, P.C., Tyler, for appellant.

Chad Dean, Henderson, Wm. B. Wagner, Fulbright & Jaworski, Austin, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Steve Dorney appeals a summary judgment in favor of Henderson Clay Products, Inc. The primary issues raised by Dorney's appeal are whether the survival statute for claims against dissolved corporations [1] and the doctrine of collateral estoppel bar the claims which Dorney brought against Henderson Clay. The survival statute bars Dorney's misrepresentation claim, and the doctrine of collateral estoppel precludes Dorney's claim for breach of contract. Therefore, we affirm the judgment of the trial court.

In 1982, Dorney entered into a farm-out agreement [2] with Henderson Clay concerning certain oil and gas leases. One day after Henderson Clay and Dorney reached this agreement, Henderson Clay agreed to sell gas from the leases to B & A Pipeline. This gas purchase contract included a take-or-pay provision.[3] B & A

---

1. Tex.Bus.Corp. Act Ann. art. 7.12 (Vernon Supp. 1992).

2. A farm-out agreement allows an oil and gas lessee who does not wish to drill to assign all or part of the lease to another operator who does wish to drill. Howard R. Williams & Charles J. Meyers, Oil and Gas Terms 342 (7th ed. 1987).

3. A take-or-pay provision allows the buyer of natural gas at specified times to either take the gas described in the contract or not take any gas, but pay an amount set forth in the contract without being in breach. Howard R. Williams & Charles J. Meyers, Oil and Gas Terms 976 (7th ed. 1987).

Pipeline then executed an identical gas purchase contract with Lone Star Gas Company.

In 1985, Lone Star's performance under the contract began to falter, and B & A Pipeline sued to recover under the take-or-pay provisions of the contract. While this litigation was pending, Atlantic Richfield Company (ARCO) acquired Henderson Clay's interests relating to the oil and gas leases and all the stock of its wholly-owned subsidiary, B & A Pipeline. ARCO took over the litigation against Lone Star.

When Dorney learned that ARCO was taking over the litigation, he intervened in the suit to recover a share of the payments. Dorney claimed a right to part of the payments because he had retained a royalty interest in oil and gas production from the leases. ARCO removed the case to federal district court, then settled with Lone Star.

Dorney, however, reinstituted the suit, asserting causes of action against ARCO, B & A and Lone Star. The federal district court rejected Dorney's claims to recover a share of the payments which ARCO received in its settlement because Dorney's gas was not dedicated to the gas purchase contracts signed with B & A or with Lone Star. The United States Court of Appeals for the Fifth Circuit affirmed the district court's judgment. *B & A Pipeline Co. v. Dorney*, 904 F.2d 996 (5th Cir.1990).

After the Fifth Circuit's decision, Dorney instituted a state court action against Henderson Clay. In 1986, while the federal lawsuit was pending, Henderson Clay had filed its certificate of dissolution. Dorney's allegations were based on a breach of contract theory, and he sought to recover a share of the payments made by Lone Star in 1983. In January 1991, Dorney filed his second amended petition and added allegations of misrepresentation. Henderson Clay moved for and received summary judgment on all claims.

**4.** The term "existing claim" means a claim that existed before dissolution and is not otherwise barred by limitations or contractual obligation incurred after dissolution.

■ A dissolved corporation continues its corporate existence for three years from the date of its dissolution to permit the survival of any existing claims [4] against it. TEX.BUS.CORP. ACT ANN. art. 7.12 (Vernon Supp.1992). Unless an action is brought on an existing claim before the expiration of the three-year period, the claim is extinguished. *Id.*

■ Dorney's original petition alleged breach of contract. He amended his petition more than three years after Henderson Clay was dissolved. This amendment alleged causes of action dealing with misrepresentation. Dorney failed to bring the misrepresentation claims within the three-year time limit set by Article 7.12. Article 7.12 is a survival statute. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549 (Tex.1981).

■ Dorney contends that his misrepresentation claim is saved by TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986). Section 16.068 allows a cause of action to be pleaded in an amended pleading after a limitations period has run if the claim relates to a cause of action filed before the limitations period ran. It does not apply to an amendment wholly based on a new, distinct or different transaction or occurrence. Dorney's misrepresentation claim against Henderson Clay is based on a new, distinct and different transaction or occurrence. Further, it does not relate to the original cause of action. Since the misrepresentation cause of action is a wholly new cause, Section 16.068 does not save it from being time barred by TEX.BUS.CORP. ACT ANN. art. 7.12.

■ Dorney's original petition alleged a breach of contract. In his federal court action, Dorney litigated the question of whether he had a right to a portion of the take-or-pay payments Lone Star made to ARCO. In affirming the federal trial court's judgment, the Fifth Circuit concluded that Dorney had reserved the right to take his gas in kind [5] and that his gas was

**5.** When Dorney entered the farm-out agreement, he reserved a royalty interest in the mineral interest it covered. In other words, he reserved a property right in a percentage of all

not and could not be dedicated to the contracts with Lone Star. *B & A Pipeline Co. v. Dorney,* 904 F.2d at 1000. Because the gas was not dedicated, he had no right to receive a portion of the payments. *Id.*

 Collateral estoppel, or issue preclusion, prevents a party from relitigating a fact issue in a subsequent lawsuit when the identical fact issue was fully and fairly litigated and was essential to the judgment in a prior litigation. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721–22 (Tex.1991); *Houston Lighting & Power Co. v. Dickinson Independent School District,* 794 S.W.2d 402, 406 (Tex.App.—Texarkana 1990, writ denied). Under federal law, collateral estoppel will bar the subsequent litigation of an issue when: (1) it is the identical issue involved in prior litigation, (2) the issue was actually litigated in the prior litigation, and (3) the determination of the issue was a critical and necessary part of the prior litigation. *Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1166 (5th Cir.1981); *compare Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d at 722.

In order to prevail on his current contract claim, Dorney must show that the contracts between Henderson Clay, B & A and Lone Star dedicated his gas. The federal court action dealt with the construction of the same contracts. The federal district court concluded that Dorney's gas was not dedicated to any of the contracts.

The federal court judgment is a judgment on the merits, the same fact issue has been litigated in the federal court action, and the same issue was necessary to the outcome of the prior federal litigation. Furthermore, the gas dedication issue must have been necessarily determined in the prior federal litigation. Therefore, both the federal and Texas doctrines of collateral estoppel bar Dorney's breach of contract claim.[6]

The judgment of the trial court is affirmed.

---

oil and gas produced under the lease he farmed out.

A royalty interest owner can decide whether he wants his royalty paid in money (a percentage of the proceeds from the oil and gas produced) or in kind (a percentage of the actual oil and gas produced). Howard R. Williams & Charles J. Meyers, Oil and Gas Terms 857 (7th ed. 1987). Dorney opted to receive his royalty in kind.

6. A number of Texas courts of appeals have held that federal collateral estoppel law governs in a state action in which collateral estoppel is asserted based on a prior federal judgment. *See,* *e.g., Shell Pipeline Corp. v. Coastal States Trading, Inc.,* 788 S.W.2d 837, 843 (Tex.App.—Houston [1st Dist.] 1990, writ denied), *citing Eagle Properties, Ltd. v. Scharbauer,* 758 S.W.2d 911, 915 (Tex.App.—El Paso 1988), *rev'd,* 807 S.W.2d 714 (Tex.1991); *Acker v. City of Huntsville,* 787 S.W.2d 79, 80 (Tex.App.—Houston [14th Dist.] 1990, no writ), *citing Jeanes v. Henderson,* 688 S.W.2d 100 (Tex.1985), and Restatement (Second) of Judgments § 87 (1982) (both of which deal with res judicata and not collateral estoppel). The result in this case is the same under either federal or Texas law, and thus we need not pass on this choice of law issue.